COPLEY
*v.*
FRETWELL.

## MURRAY *v.* GIBSON et al.

A note made and payable in another State must be governed by the laws of that State.

A receipt *sous scing privé* has no date as to third persons, without proof of the time of its execution.

By the laws of Mississippi payment of a promissory note by the maker, before maturity, and prior to the acquisition of the note by a third person, who obtained it without notice of the payment, though the note be not delivered to the maker, is binding on such third person; but a payment, after the acquisition of the note, would create no equity against him.

Where the result of an action in favor of the party by whom a witness was offered, would render the witness liable to the opposite party for a certain sum, but if unfavorable would subject him to a much larger debt to the party by whom he was introduced, his interest is not equal, and his testimony should be disregarded.

Rights acquired by third persons subsequently to an attachment, cannot affect the rights of the attaching creditor.

A PPEAL from the District Court of Madison, *Curry*, J.

This is a suit by attachment, instituted by the plaintiff on a promissory note for $5,159 27, executed by defendants on the 25th February, 1839, dated at Hall's Ferry, and payable to the order of *George Henderson*, at the Union Bank of Mississippi, on the 1st of January, 1841, at Jackson.

Defendants plead payment, and set up in protection of such payment the statute of Mississippi, of 25 Jan'y, 1822.

Plaintiff acquired possession of the note and his interest therein, by a seizure and sale under an attachment sued out by him against *Henderson*, the payee, on the 23d December, 1840.

Defendants relied, in proof of payment before attachment,

1st. Upon the testimony of *Henderson*, the payee, who, in answser to the second interrogatory, said : " I was the holder of the note drawn by defendants in my favor, for $5,159 27. The defendants made an agreement with me, in November, 1840, to pay certain debts which I owed to the amount of said note, *which they did.* I gave them a receipt for the same." *Henderson* further stated that, in the early part of the winter of 1840, he handed the note to *J. L. Kinnard*, of Grand Gulf, with a request that he would exchange it for a draft held against him by *Brander*, *McKenna* & *Wright*, who declined the transaction. Subsequently it was attached by plaintiff.

2d. Upon the receipt of *Henderson*, which was offered in evidence, and is in the following words :

" *Old Cayuga, Nov.* 28, 1840.

"Received of *Wm. L.*, and *John A. Gibson*, five thousand one huudred and fifty-nine dollars and — cents, as a payment on a note drawn by *Wm. L.*, and *John A. Gibson*, for the same amount, and dated at Hall's Ferry, Feb'y 25, 1839, and due 1st January, 1841, which note I promise to give to *Mr. L. Gibson*, as soon as convenient. GEO. HENDERSON.

3d. Upon the answers of *Gibson* to interrogatories propounded by plaintiff. In his answers he alleges ignorance, at the time of payment, of the disposition of the note, and states as reason why he did not receive the note at the time of settlement, to wit: that the receipt was given at defendant's own house, and *Henderson* did not have it with him at the time. He does not state that the note was paid.

Exception is taken by plaintiff to the testimony of *Henderson*, as incompetent, on the ground of interest.

The 9th section of the act of the legislature of Mississippi of 25th June, 1822, in relation to bills of exchange, promissory notes &c., which was introduced in evidence by defendants, provides that defendants shall have after assignment equally as before, "the benefit of all want of lawful consideration, failure of consideration, *payments*, discounts and setts off, made, had or possessed against the same, *previous to notice of assignment*, in the same manner as if the same had been sued on, and prosecuted by the obligee or payee."

There was a judgment in favor of the plaintiff, from which the defendants appealed.

*J. Dunlap* and *Thomas*, for the plaintiff. 1. *Henderson* was incompetent on the ground of interest. The competent witness must not be interested, either directly or indirectly. C. C. art. 2260. A surety, novating the debt of his principal, is not a competent witness to prove the novation. It is said, that *Henderson's* interest is equally balanced in the case, and that, as such, he is a competent witness between the parties. The facts do not support the position assumed. The note was attached, sold at sheriff's sale, and bought by the plaintiff, for $100. If the plaintiff fails to recover on the note, *Henderson* is liable to him upon his legal warranty to return the purchase money, to the amount of $100. C. P. arts. 711, 712. 3 N. S. 221. On the other hand, if the plaintiff gains the suit, *Henderson* will be liable to the defendants to refund them the amount of the note, principal, interest, and costs of suit, upon his acknowledgement of payment, whether true or false. The difference of interest, then, felt by *Henderson* against plaintiff, and in favor of defendants, is as $100 is to over $7000. 3 Starkie Ev. 1729. Greenl. Ev. pp. 391, 393, 394, 420.

2. *Henderson*, by endorsing the note in blank, and sending it to the city, before maturity, to be negotiated in taking up a draft previously drawn by him, gave it a public commercial credit, which he will not be received as a witness to destroy, by showing that, at the time he endorsed, and sent it into the commercial world, it was paid. Greenl. Ev. p. 428, 429, 430, 431, nos. 383, 385, and notes. 10 M. 185. 5 Ibid. N. S. 130. On this point, there is some diversity of opinion. Some authors holding, that the objection should go rather to the credit than the competency of the witness. But it will be seen, by the references, that the weight of authority is decidedly in favor of exclusion. But, if admissible, under the circumstances, is his testimony entitled to the slightest credit? Can any faith be placed in the statements of one who swears, that, in November, 1840, "he receipted the note to the defendants, who agreed to pay the amount to his creditors, which they did; and that in the winter he sent the note to the city to take up a draft;" and that, too, when it is palpably his interest to sustain this view of the matter. The statement furnishes the most incontestible evidence of fraud, or perjury.

3. The receipt of *Henderson*, as an act *sous seing privé*, has no date against the plaintiff, unless its real date be proved dehors the instrument, but that on which it was offered in court. B. & S. Dig. p. 12, Act sous seing privé, no. 6. The right of the plaintiff to an affirmance of the judgment, is unquestioned, except by defendants' plea of payment to the payee, before notice of the plaintiff's right having attached. The note was attached in the hands of *Bogart*, the garnishee, on the 23d of December, 1840; and from that day the plaintiff dates his right to it. 8 Mart. 511.

*Snyder, Stacy, Sparrow, Prentiss* and *Finney*, for the appellants, *Henderson's* interest was in direct conflict with his testimony. It was for his interest to sustain the attachment, for he was bound to plaintiff, as warrantor, for the

amount bid for said note, in case plaintiff's title under his purchase should prove invalid. He was testifying, then, against his own interest, and his evidence was clearly competent. C. C. arts. 2598, 99. C. Practice, art. 711. *Kennard* v. *Gustine*, 9 Rob. 172. *McMicken* v. *Fair*, 4 N. S. 172. *Shipman & Co.* v *Archinard*, 19 La. 471. *Travis* v. *January*, 3 Rob. 229. 12 La. 289. 4 Mart. 539. 5 Ib. T. S. 277. 2 La. 293. 4 La. 201. Even without the testimony of *Henderson*, the defence of payment is fully made out by the receipt itself, and the answers of the defendant, *J. A. Gibson*, to plaintiff's interrogatories. But it may be objected, that this payment is not good, because made before the maturity of the note, and without its delivery to the maker. The payment must be tested by the laws of Mississippi, where the note is payable, and where the payment was made. It is clear the satisfaction is good, so far as *Henderson* was concerned. Were he the plaintiff, his receipt would be conclusive; and by the laws of Mississippi, the defence is equally good against the present holder.

As to the non-delivery of the note, at the time of settlement, it cannot effect the defence. This has been expressly ruled. In the case of *Allen* v. *The Agricultural Bank*, 3 Smedes and Marshall, 48, the note was settled by the maker, without its production, and he took a bond of indemnity against it. It afterwards came into the hands of a *bona fide* assignee. Yet the court held the payment a good defence under the statute.

If the defence is good against a *bona fide* assignee by contract, *a fortiori*, is it good against a mere legal assignee, under judicial sale? Plaintiff acquired under his purchase only the rights of *Henderson*, and cannot, even under the laws of Louisiana, claim any greater. He is not an assignee of negotiable paper, received before maturity, in the ordinary course of trade, but the mere purchaser of the rights of *Henderson*, the defendant in the original attachment. ⊢ An attaching creditor takes no greater right than those belonging to his debtor. 8 Mart. N. S. 339. 18 La. 321. And it is the same with the purchaser at sheriff's sale. 7 L. R. 318.

The judgment of the court was pronounced by

SLIDELL, J. This suit is brought upon a note made by the defendants, jointly and severally, to the order of *George Henderson*, dated and payable in Mississippi. The plaintiff acquired the note under execution and judicial sale, for the price of $100, in an attachment suit brought by him against *Henderson*, the payee. This is the only collection which *Murray* has been able to make upon his claim against *Henderson* for $10,000, due since 14th May, 1838.

The defence is payment, and to establish it the defendants rely upon a receipt, under private signature, purporting to bear date at a time anterior to the levy of the attachment, and also to the maturity of the note, by which *Henderson* acknowledged to have received its amount from the makers, and promised to deliver the note to *L. Gibson*, one of them, "as soon as convenient." The statute of Mississippi concerning bills and notes, was offered in evidence.

The law of that State must control the contract, it being made and payable there. That State places promissory notes and bills upon a very different footing from that which they have under the law merchant and statutes of England, and of most of the States of the Union; and we shall assume, for the purposes of our present inquiry, that, under the statute of Mississippi, a payment made to *Henderson* by the *Gibsons*, prior to the acquisition of the note by the plaintiff, even though unaccompanied by a delivery of the note to the makers, would be an effectual bar against the plaintiff, or any other innocent holder, withou notice. The proof of payment rests mainly upon the receipt, the testimony of *Henderson*, and the answers of one of the makers to interrogatories.

The receipt, being under private signature, has, *per se*, no date against third persons. To give it effect, it was necessary to prove the time of its execution. Under the laws of Mississippi, a payment made prior to the acquisition of the

MURRAY
*v.*
GIBSON.

MURRAY
v.
GIBSON.

note by the plaintiff, would bind him; but a payment subsequently made, would create no equity. *Non constat*, by the mere writing under private signature, that it was not subsequently given to defraud the plaintiff. We must look, then, to the proofs *aliunde;* and here the first inquiry is, what weight is to be given to the testimony of the payee of the note.

It is urged by the defendants that the interest of that witness was equally balanced. That if the plaintiff failed in his action on the note, by reason of the alleged payment, the credit of $100 (the price of the note at the judicial sale in the attachment suit), acquired by the defendant in execution would be rescinded, and that this was a counterpoise of his liability to the present defendants, under his covenant in the receipt, if they should be condemned in the action to pay the note a second time. But it is obvious that there was not an equal balance. In the one case the witness would lose $100; in the other, he would become liable for $5,159 27, with eight per cent interest from maturity, and costs and charges incurred in the defence of this action. The difference is at least as one to seventy. The witness was interested to the amount of this great excess. The judge of the court below appears to have disregarded his testimony, and we are not prepared to say that in this there was error.

The answers of *Gibson* to interrogatories do not establish the time of the execution of the receipt, nor the fact of payment, and the character of the answers is not, in other respects, such as to aid the defendants' cause.

It is urged that before *Murray* purchased the note, at the judicial sale in the attachment suit of *Murray* v. *Henderson*, he was warned, by the intervention of the *Gibsons* in that suit, of the defence now set up, and was a purchaser with notice. If payment be not proved, notice that the makers would resist a future action upon the note on that ground, appears to us immaterial. But, besides this, it is not to be said that the rights of *Murray* rest on the judicial purchase alone; they rest upon the antecedent attachment, of which the judicial sale was the complement, and an equity acquired after the attachment could not operate *retroactively* upon rights acquired by the attachment.

Upon a careful consideration of the evidence, we are of opinion that the payment has not been proved; there is, on the contrary, just reason to believe what has been so forcibly urged by the counsel, that the receipt was an after thought and contrivance to defeat the plaintiff's recovery.

We concur with the judge below that no valid defence has been established, and consider his decree as having done justice in the cause.

*Judgment affirmed.*