as the above and the number No. 22221 of the docket of this court (72 South. 976), I respectfully dissent from the opinion and decree herein this day handed down.

---

(72 South. 979)

No. 22103.

BORNE v. ALEXANDER HARDWOOD CO., Limited, et al.

(Nov. 13, 1916.)

*(Syllabus by the Court.)*

1. SALES ☞55—REQUISITES AND VALIDITY—WHAT LAW GOVERNS.

Where the writing evidencing a sale of personal property by a corporation domiciled in Michigan, to a corporation domiciled in Louisiana, does not disclose where the contract of sale was made, and the proof is that the property sold was situated in Tennessee and was there delivered to a representative of the purchaser, that the notes representing the purchase price, though signed in Louisiana, were payable at a bank in Arkansas, and that the price was to be paid with certain strips of lumber to be delivered to the vendor in Michigan, it is *held* that the sale is not governed by the laws of Louisiana, but by the common law, in which the vendor's lien on personal property is not recognized.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 2, 153; Dec. Dig. ☞55.]

2. RECEIVERS ☞128—PRIORITIES OF CLAIMS.

According to the provisions of section 5 of Act No. 159 of 1898, as amended by Act No. 212 of 1910, before it was again amended by Act No. 199 of 1914, the privilege, securing the payment of debts contracted by a receiver, for money borrowed on certificates of indebtedness, or for necessary supplies purchased by the receiver, and used in carrying on the business of the corporation as a going concern under the orders of court, was superior in rank to the lien and privilege of the vendor of a part of the property of the corporation. Such debts contracted by a receiver are in the category of law charges, and are taxed as costs of court.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 205, 210, 219–222; Dec. Dig. ☞ 128.]

Appeal from Sixteenth Judicial District Court, Parish of St. Landry; B. H. Pavy, Judge.

Action by M. Borne against the Alexander Hardwood Company, Limited. From a judgment amending the final account of the receivers of defendant and order of distribution of the funds of the corporation, the Union Bank & Trust Company and others appeal. Reversed and remanded with directions.

William J. Sandoz, of Opelousas, for appellants Union Bank & Trust Co. and others. John W. Lewis, of Opelousas, for appellant receivers. Gilbert L. Dupré, of Opelousas, for appellee Durant-Dort Carriage Co.

O'NIELL, J. This is an appeal from a judgment amending the final account of the receivers of the Alexander Hardwood Company and ordering a distribution of the funds of the corporation and a settlement of its affairs according to the amended account. The following named creditors appealed from the judgment, viz.: Union Bank & Trust Company, holding certain receivership certificates; the Eunice State Bank, claiming $300 for rent of property used by the receivers, and $246.70 for feed furnished for the work animals used by the receivers; the Lyman-White Grocery Company, claiming $223.05 for feed sold to the receivers for the work animals used by them; the firm of Frankel & Mayer, claiming $368.60 for merchandise sold to the receivers and used by them in the operation of the plant as a going concern during the receivership; Gus Fuselier, claiming $683.27 for merchandise sold to the laborers and for money furnished them and deducted by the receivers from the amounts due the laborers on the payrolls during the operation of the plant as a going concern; Dudley Berwick, claiming $67.50 for brick and other building material sold to the receivers and used by them in the operation or upkeep of the plant; Tony Aguilard, who appears on the payroll account as a creditor to the amount of $70. The receivers also appealed from the judgment amending the account, their principal complaint being that the district court reduced their fees from $750 each to $500 each, and reduced the fee of their attorney from $750 to $500. The

only creditor or party having an interest who has appeared as appellee in this court is the Durant-Dort Carriage Company, whose lien and privilege as the vendor of certain machinery was recognized in the judgment appealed from as being superior in rank to the liens and privileges claimed by the appellants.

The attorney for the receivers calls our attention to a palpable error in the account, whereby they are charged with $1,094.32 more than they received. The cost of operating the mill by the receivers amounted to $21,623.31, as shown by the itemized list of disbursements, as to which there seems to be no contest. The total receipts of money by the receivers during the operation of the mill, including $3,000 received from the Union Bank & Trust Company for the receivers' certificates issued under an order of court, amounts to $22,578.74, according to the final account filed by the receivers. In this total of receipts, however, are included certain items which the court has charged twice to the receivers in the judgment amending the account. Subtracting the $21,623.31, operating expenses, from the $22,578.74 receipts, the district judge debits the account of the receivers with the difference, $955.43, as "excess of receipts over disbursements." The judge then debits the account of the receivers with the following amounts received by them, viz.: Proceeds of sale made February 6, 1915, $748 (should be $748.87); proceeds of sale made February 27, 1915, $1,497.75; and proceeds of sale made May 1, 1915, $4,-251. In the total of $22,578.74 of receipts of funds by the receivers is included an item of $189.87, received from the Mutual Wheel Company, on March 5, 1915, for lumber and spokes sold to that company. That item, however, is also included among the items making up the total of $748.87, being the proceeds of the sales made by the auctioneer on the 6th of February, 1915. The total of $22,-

578.74 of receipts also includes certain sums received for machinery sold, which items are doubly charged to the receivers as a part of the proceeds of $1,497.75, from the sales made on the 27th of February, 1915, viz.: An item of $15 received from W. D. Jenkins is made up of the $5 paid for a 25 H. P. stationary engine and $10 paid for a 30 H. P. Erie skid boiler, both of which items are included in the total of $1,497.75 proceeds of the sale made on February 27, 1915.

The item of $3.25 collected from P. M. Prudhomme, and included in the total of $22,578.74, is undoubtedly the same $3.25 received from him as the price of five crosscut saws, included in the total of $1,497.75, proceeds of the sale of February 27, 1915. The same is true of the item of $4 received from E. B. Martel, which is evidently made up of the $2 received from him as the price of six cant hooks, and $2 paid by him for log chains, both items being included in the total of $1,497.75, proceeds of the sale of February 27, 1915. The item of $5.50 received from A. Boudreaux is made up of the $3 paid by him for a horse clipper, $2 for an old wagon, and 50 cents for an account of $30 against himself, all of which items are included in the $1,497.75, proceeds of the sale of February 27, 1915. The item of $1 received from A. Humbles also appears among the items making the total of $1,497.75 as the price of a crosscut saw sold to Allen Humbles. The item of $25 received from C. Hinchcliffe, and another cash item of 50 cents, are, respectively, the $25 paid by Hinchcliffe for a 40 H. P. skid boiler, and the 50 cents paid by L. Lacombe for an account against the Lewis-Barnett Hardwood Company, both of which items are included in the $1,497.75, proceeds of the sale of February 27, 1915. The item of $30.20, received from J. A. Perkins for land, is undoubtedly the cash payment of 20 per cent. of his bid of $151, at the auction sale of date the 1st of May, 1915, the entire

amount of which bid is included in the $4,-251, charged to the receivers on the amended account as the total proceeds of the sale of that date. The same is true of the item of $20 received from the Union Bank & Trust Company "for sawmill," which is 20 per cent. of the $100 bid by the company, all of which is included in the $4,251, proceeds of the sale dated the 1st of May, 1915. The item of $800, received from G. Dupré, attorney for the Durant-Dort Carriage Company, is the cash payment of 20 per cent. of the $4,000 bid by him at the auction sale on May 1, 1915, the entire amount of which bid is included in the $4,251 charged to the receivers on the amended account, as the proceeds of that sale.

These items, amounting to $1,094.32, which are included in the various sums charged against the receivers on the amended account, as the proceeds of the sales of February 6, February 27, and May 1, 1915, must be subtracted from the $22,578.74, collected by the receivers, in which total these items are also included. Hence the total receipts from the operation of the mill by the receivers (together with the $3,000 received from the Union Bank & Trust Company, for receivers' certificates) amounted to $21,484.42; and, instead of being charged with $955.43, as "Excess of receipts over disbursements," as appears on the amended account, the receivers are entitled to credit for $138.89, excess of disbursements over receipts. The receipts from the three auction sales of the property of the corporation amount to $6,497.62, and leave $6,358.73 in the hands of the receivers, as the excess of receipts over disbursements.

In the judgment appealed from, the district court held that the Durant-Dort Carriage Company was entitled to the proceeds of the sale of certain machinery which that company had sold to the Alexander Hardwood Company on terms of credit, with recognition of the vendor's lien, and by preference over the holder of the receivership certificates and the other creditors who had furnished money and supplies necessary for the operation of the plant by the receivers as a going concern. The proceeds of the sale of the machinery on which the Durant-Dort Carriage Company claimed the vendor's lien amounted to $4,000, from which the court deducted a pro rata share of the costs of the receivership, fixing the amount arbitrarily at $125, and ordered that the Durant-Dort Carriage Company be paid the balance of $3,875 by preference.

[1] The appellants contend that the Durant-Dort Carriage Company was not entitled to a vendor's lien or privilege on the machinery sold by that company to the Alexander Hardwood Company, because, as the appellants contend, the machinery was not sold in this state. The contract of sale does not, on its face, disclose where it was signed or where the sale was made. The promissory notes signed by the Alexander Hardwood Company, representing a part of the purchase price, and identified with the sale, are dated at Eunice, La., May 5, 1913, the date which the contract also bears. The notes are made payable at the Merchants' & Planters' Bank, in Pine Bluff, Ark. The property conveyed is described in the contract of sale as the powers, equipments, machines, tools, and furnishings of the Imperial Spoke & Rim Plant, at Dyersburg, Tenn. The property was delivered to the Alexander Hardwood Company, at Dyersburg, Tenn., where a representative of the purchasing company had the plant dismantled and shipped it to Eunice, La. The bills of lading for the two carloads of the machinery disclose that the machinery was received by the railroad company, from the Alexander Hardwood Company, at Dyersburg, Tenn. The price of the machinery, $5,500, was declared in the contract of sale to be payable by the purchasers' furnishing to the Durant-Dort Carriage Company—

"rim strips, at the price of $68.00 per thousand feet, as per Imperial Wheel Co.'s order No. 5357, dated the 12th of March, 1913, and as per specifications therein mentioned; said strips to be delivered at the above price in Flint, Michigan, subject to the inspection at the mill of the party of the second part [the Alexander Hardwood Company], by the inspector designated by the party of the first part [the Durant-Dort Carriage Company], the party of the second part [the Alexander Hardwood Company] to pay all the expenses of inspecting said strips."

It is stated in the contract that, from and after its date, the property sold became the property of the purchaser, "subject only, however, to the payment of the purchase price." The contract recites that the promissory notes described therein were given for the purchase price of the machinery, and recites that, as the strips should be furnished and inspected and accepted by the Durant-Dort Carriage Company, the amount they represented would be credited on the notes; and it was further stipulated in the contract that if the purchaser of the machinery should fail or refuse to deliver sufficient rim strips to pay the notes when due, the Durant-Dort Carriage Company might, at once, enforce its "purchase-money liens" on the property, and sell the same to pay the balance due on the purchase price, or at its option might extend the time of payment and delivery of strips to any date that might be agreed to in writing. The written contract concludes with the stipulation that a "purchase-money lien" is retained on the machinery until payment of the entire purchase price of $5,500, either by the furnishing of strips or in cash.

It is contended by the appellants that the sale of the machinery in question was, not made in Louisiana, and is not governed by the laws of this state, wherein the vendor's lien is recognized. It is contended that the contract of sale must be governed by the laws of Tennessee, in which state the machinery was delivered to the purchaser, or that it must be governed either by the laws of Michigan, where the purchaser was to execute the contract by the delivery of rim strips, or by the laws of Arkansas, where the notes representing the purchase price of the machinery were payable. The following decisions by this court are cited in support of the proposition that we should take judicial cognizance of the fact that the common law, prevailing in Tennessee, Michigan, and Arkansas, does not recognize the vendor's lien or privilege on personal or movable property, viz.: McIlvaine & Spiegel v. Legare & Godchaux, 34 La. Ann. 923, citing Copley v. Sanford, 2 La. Ann. 335, 46 Am. Dec. 548; Whiston v. Stodder, 8 Mart. (O. S.) 95, 13 Am. Dec. 281; Colt v. O'Callaghan, 2 La. Ann. 984. The defendants also cite the case of Murray v. Gibson et al., 2 La. Ann. 311, where it was held that a note made payable in another state is governed by the laws of that state. In De La Vergne v. N. O. & Western R. R. Co., 51 La. Ann. 1733, 26 South. 455, it was held that the sale of certain cotton presses, made in New York, to be executed by the delivery of the presses in Louisiana, was governed by the laws of Louisiana, and that the presses were subject to the vendor's lien recognized by the law of this state. In the case of Willey v. St. Charles Hotel Co. et al. (on rehearing), 52 La. Ann. 1598, 28 South. 182, it was held that a contract of sale of certain mahogany lumber, ordered from this state, to be delivered in Minneapolis, where it was worked up and shipped to New Orleans, the purchase price being represented by promissory notes payable in Minneapolis, was governed by the laws of Minnesota. Applying the doctrine of the foregoing decisions, our conclusion is that the Durant-Dort Carriage Company is not entitled to the vendor's lien and privilege recognized by the law of this state.

[2] We are also of the opinion that the creditors who furnished to the receivers money or supplies necessary for the operation of the sawmill as a going concern during the receivership would be entitled to be paid by

140 La.—11

preference to the Durant-Dort Carriage Company, even if the latter were entitled to the vendor's lien and privilege. The receivers were appointed on the 27th of January, 1914, and were then authorized by the court to operate the mill and carry on the business of the corporation as a going concern. On the 12th of February, 1914, the court authorized the receivers to issue the certificate of indebtedness for $3,000, which was negotiated with the Union Bank & Trust Company, and the proceeds were used by the receivers to pay necessary expenses in operating the plant. The notes held by the Durant-Dort Carriage Company became due in July, August, September, October, and November, 1913; and the corporation was advised promptly of the appointment of the receivers and of the fact that they were authorized to operate the plant and carry on the business of the corporation as a going concern for the benefit of the creditors. Under these circumstances, we are of the opinion that the case is governed by the doctrine announced in Teutonia Bank & Trust Co. v. Security Brewing Co., 137 La. 1046, 69 South. 833, where it was held that those who had furnished to the receiver of the defendant corporation the supplies and materials necessary for the operation of the business of the corporation as a going concern were entitled to be paid out of the proceeds of the sale of the property of the corporation in preference to the claim of a mortgage creditor who, having the right to foreclose his mortgage at will, had acquiesced in the appointment of the receiver with authority to conduct the business of the corporation as a going concern, and had awaited the result of that experiment, of which, if it had been successful, the mortgage creditor would have received the benefit. Act No. 212 of 1910, amending and re-enacting section 5 of Act No. 159 of 1898, authorizing and regulating the appointment of receivers of corporations,

expressly declares that a debt represented by a receivers' certificate shall be taxed as costs of court and bear a first privilege on all of the property and income of the corporation. That statute was amended and re-enacted by Act No. 199 of 1914 so as to provide that a vendor's lien and privilege shall remain unimpaired by the issuance of certificates of indebtedness by a receiver. But the amendment of the law was adopted after the present contest arose, and has no application to this case.

In the case last cited it was held that, although the statute required an order of court to authorize a receiver to borrow money on a certificate of indebtedness, it did not require an order of court for the purchase of such supplies and materials as were necessary, in the ordinary course of business, to operate the plant as a going concern.

There seems to be no complaint regarding the expenditure of the $21,623.31, spent by the receivers while they were carrying on the business of the corporation as a going concern; nor is it contended that the materials and supplies sold by the creditors who are appellants in this case were less necessary to carry on the business than the other purchases and expenditures made by the receivers during the operation of the business.

There is no merit in the contention of the attorney for the Durant-Dort Carriage Company, that the appellants are estopped from contesting the right of the Durant-Dort Carriage Company to be paid by preference by the fact that the attorney of the receivers wrote certain letters to the attorney of the Durant-Dort Carriage Company, expressing the opinion that the latter's lien and privilege as the vendor of the machinery could not be affected by anything the receivers might do. The attorney of the receivers was of the opinion, when he wrote the letters, that the business conducted by the receivers would be successful, and that all of the cred-

itors of the corporation would be paid. He had no authority to waive, and did not express the intention of waiving, any rights that the creditors of the receivers might have to contest the claim of the Durant-Dort Carriage Company. We are also of the opinion that there was no merit in the objection to the admissibility of testimony to show where the contract of sale by the Durant-Dort Carriage Company to the Alexander Hardwood Company was made. The testimony did not contradict the recitals of the written contract, because the place where the contract was made was not stated in the writing evidencing the contract.

On the trial of the oppositions to the final account, it was admitted by all parties to the proceeding that the debt of $685.27, due to Gus Fuselier, was for merchandise furnished and money paid by him to the employés of the receivers, engaged in operating the mill as a going concern during the receivership, and that the amounts so paid or furnished by Fuselier were deducted from the wages due to the employés by the receivers, according to the payrolls; and that the money paid and merchandise furnished by Mr. Fuselier was to that extent in lieu of the cash that would otherwise have been paid to the employés by the receivers in the operation of the mill. Under the doctrine of the case last cited, the debt so incurred by the receivers is within the category and enjoys the privilege of costs of the receivership. Although, from certain objections made to the admissibility of the evidence, it appears that the admission in regard to the nature of the debt due Gus Fuselier was intended to apply also to the debt due the Lyman-White Grocery Company, and, perhaps, to the debt due Frankel & Mayer, to that due to the Eunice State Bank for feed, and to that due to Dudley Berwick for bricks and other materials, the admission does not expressly include the latter claims; and the

evidence as to them is not altogether satisfactory. In fact, we have been unable to find in the transcript a copy of the petition of two of the appellants, Dudley Berwick and Tony Aguilard, opposing the final account of the receivers, although their claims appear on the account and are referred to in the record.

On account of the apparent errors in the account, we have concluded not to attempt to recast it, but to remand the case, in order that the receivers may file a final account in accordance with this opinion. The appellant, Union Bank & Trust Company, is entitled to have the balance due on the receivership certificates taxed as costs of court and paid by preference out of the funds in the hands of the receivers. The appellant, Gus Fuselier, is entitled to the same privilege for the payment of the debt of $685.27, due him; and, if it be proven that the debt of $223.05, due to the Lyman-White Grocery Company, the debt of $368.60, due Frankel & Mayer, the debt of $300, due to the Eunice State Bank for rent of property used by the receivers, and the debt of $246.70, due to that bank for feed, and the debt of $70, due Tony Aguilard for labor, and that of $67.50, due to Dudley Berwick for bricks and other material furnished the receivers, were necessary expenses incurred by the receivers in the operation of the mill or carrying on the business of the corporation as a going concern, these claims are in the same category, and are entitled to the same privilege, as that of Gus Fuselier. The case will be open for the admission of further evidence with regard to their claims when the receivers file their final account in accordance with this opinion.

No reason was assigned by the district judge for reducing the fee of the attorney of the receivers from $750 to $500, and the only reason given for reducing the fees of the receivers from $750 to $500 is "that the

undertaking has proven so disastrous to the creditors." It does not appear that the receivers are to be blamed for the failure of the business conducted by them. They operated the mill and carried on the business of the corporation, giving it their personal attention, under the orders of the court, for nearly a year. The evidence in the record proves that $750 for each of them, and a fee of that amount for their attorney, would be only reasonable compensation. No evidence whatever was offered in opposition to that allowance on the receivers' account. The only creditor who alleged that the allowance was excessive is the Durant-Dort Carriage Company. Our opinion is that the allowance of $750 on the receivers' account as compensation for each of them, and the allowance of a fee of $750 to their attorney, was correct, and should not have been reduced.

It is stated in the judgment appealed from that one of the receivers, T. B. Milkey, has received $581.61 in excess of the compensation allowed him by the court, and that the other receiver, J. J. Lewis, has received $133.-35 in excess of the compensation allowed him by the court, from which we conclude that the court found that T. B. Milkey had drawn $1,081.66, and that J. J. Lewis had drawn $633.35. It is stated at the end of the account of the receivers that J. J. Lewis has drawn $607.85, of which $390 was for rent of the land on which the mill is situated, and that the other receiver, T. B. Milkey, has drawn $480.82 of the compensation due him. The items which we find charged to the account of J. J. Lewis, however, amount to only $567.10, and the items charged to T. B. Milkey amount to $1,040.65. It will be necessary that further evidence be adduced to correct these discrepancies on the final account of the receivers.

Our opinion is that the judgment appealed from is correct in so far as it decrees that the claim of Hirsch & Blackman for $412.80 is an ordinary debt of the corporation, not a debt of the receivership or secured by any lien or privilege. It represents the difference between the amount of a judgment rendered by the district court in favor of Hirsch & Blackman and the amount for which certain mules on which they held a vendor's lien were sold by the sheriff after the judgment was affirmed by the Court of Appeal. It is argued that the debt is a receivership debt because the mules were used by the receivers in carrying on the business pending the suspensive appeal from the judgment, recognizing the vendor's lien in favor of Hirsch & Blackman, and that the surety on the suspensive appeal bond, who will have to pay the amount, should be reimbursed out of the funds in the hands of the receivers. We cannot adopt that view. If the use of the mules was necessary to the business carried on by the receivers, they should have obtained authority from the court to pay the debt due on them. There is no more reason for allowing the surety on the suspensive appeal bond of the receivers to be paid by preference the difference between the amount that Hirsch & Blackman realized from the sale of the mules and the amount that was due than there would be for allowing Hirsch & Blackman to be paid that difference by preference if they had sustained the loss.

For the reasons assigned, the judgment appealed from is annulled, and it is ordered that this case be remanded to the district court for the receivers to file a final account in accordance with the views hereinabove expressed, and for the case to be proceeded with and the affairs of the corporation settled accordingly. The costs of this appeal are to be paid out of the funds in the hands of the receivers.