**147 So. 31**

**In re RECEIVERSHIP OF BALDWIN LUM-BER CO., Limited.**

**OPPOSITION OF HERNANDEZ BROS. v. BARRY, Receiver.**

**No. 29657.**

Feb. 27, 1933.

Rehearing Denied March 27, 1933.

Ed. Meaux and Lessley & Rouly, all of Lafayette, for appellants.

Mouton & Davidson and Dan DeBaillon, all of Lafayette, and Burke & Smith, of New Iberia, for appellees.

BRUNOT, Justice.

On January 29, 1925, Arthur M. Bowen was appointed receiver of the Baldwin Lumber Company, Limited, with full power to administer its business as a going concern. On December 4, 1925, J. C. Barry was appointed coreceiver of said company. On March 15, 1926, Arthur M. Bowen tendered his resignation as coreceiver and, in obedience to the court's order, filed an account covering his sole administration of the receivership from the date of his appointment to December 4, 1925, and of the joint administration of the receivership by himself and J. C. Barry from that date to February 1, 1926. This account was not opposed and, in due course, it was homologated by judgment of the court. Thereafter the receivership continued under the management and control of J. C. Barry alone, as a going concern, until the court ordered the abandonment thereof and the liquidation of the corporation's affairs. The assets of the corporation were sold and, on May 2, 1927, the receiver filed his tableau of distribution together with an account of his administration of the affairs of the re-

ceivership from February 1, 1926, throughout the term of his administration as sole receiver. Several oppositions to the account were filed, but all were satisfactorily disposed of by judgment except the opposition of Hernandez Bros. The decree rendered as to these opponents is as follows:

"It is ordered, adjudged and decreed, that there be judgment maintaining the opposition to the extent of recognizing the claim of the opponents as to the amount of its claim with recognition of opponents' privilege over all other claims filed by the Receiver, but dismissing the opposition insofar as it seeks to prime the certificates of indebtedness issued by the receivership and the privilege therein decreed."

The opponents perfected a suspensive appeal from the judgment and the only question the appeal presents is, whether or not receivership certificates, and the interest due thereon, prime the laborers' lien.

During the conduct of the receivership, as a going concern, the receivers issued, under orders of the court, certificates of indebtedness to pay the expenses of operation. These certificates were ultimately paid, but pending their payment interest had accrued on them amounting to $11,869.40, which was not paid. This item is carried on the receiver's tableau of distribution as entitled to the same rank and privilege as the certificates themselves.

Appellants contend that receiver's certificates do not prime the laborers' lien, but, in the alternative, that the lien is restricted to the sum borrowed, exclusive of the accrued interest thereon.

The gravamen of appellants' complaint is

that section 5 of Act No. 159 of 1898, as amended, is unconstitutional in that it is broader than the title of the act. The title is as follows:

"An Act to authorize and regulate the practice of appointing receivers of corporations under Article 109 and 133 of the Constitution."

The Constitution of 1898 was in force when the act was passed. Articles 109 and 133 of that Constitution fix and determine the jurisdiction of the district courts in receivership proceedings, and confer upon those courts exclusive original jurisdiction of all proceedings for the appointment of receivers or liquidators to corporations or partnerships, and clothe them with authority to issue all writs, process, and orders that may be necessary or proper for the exercise of the jurisdiction thus conferred. Section 5 of Act No. 159 of 1898 is as follows:

"Sec. 5. Be it further enacted, etc., In the order appointing such receiver the Court may, in its discretion, confer on the receiver such powers of administration as it may deem best for the interest of all parties, and may from time to time restrict or enlarge such powers, and may authorize any receiver of a corporation, public in its character, in order to carry on the business of the corporation, to borrow or obtain money on certificates of indebtedness to be taxed as costs of court. The sum so obtained shall bear a first privilege on the property and income of the corporation."

Section 5 of the act is, in our opinion, an enumeration, in more specific terms, of the powers conferred by articles 109 and 133 of

the Constitution of 1898, and as the title recites, that the act is to regulate the practice, etc., under articles 109 and 133 of the Constitution, we see no merit in the contention that section 5 of the act is violative of article 31 of the Constitution of 1898, or of section 16 of article 3 of the Constitution of 1921. The books are full of decisions holding that whatever is germane or incidental to the object expressed in the title is embraced within that title.

Counsel for the appellees correctly say in their brief that:

"Section five is a declaration of the powers of the court granted under the articles of the Constitution. * * * The act does not propose to and does not create a lien and privilege to secure the payment of the certificates. * * * It is the court in the exercise of its power under the Constitution which creates the lien, a well recognized power and authority and necessarily inherent in the court, in managing the business of the corporation in the exercise of its equity powers. * * * That it was not the intention of the Legislature to create a privilege under the provisions of section 5, in the sense of the Civil Code, is patent from a cursory reading of the section, because under the Constitution and laws of this State privileges affecting immovable property must be recorded in order to protect the rights of the party claiming them against third persons. * * * All presumptions are in favor of the constitutionality of the law and the interpretation of the law as enacted should not lead to an absurdity."

Section 5 of Act No. 159 of 1898 was amend-

ed by Act No. 199 of 1914 so as to read, with respect to the rank and privilege of the sums borrowed on receiver's certificates, as follows:

"The sum so obtained shall bear a privilege on all of the property real or personal, and the income of the corporation to be paid by preference and priority over all other creditors of the corporation,—save the vendor's lien and privilege which may be outstanding due and owing at the time the certificates are issued, which vendor's lien and privilege shall remain unimpaired and retain its present status as provided for by existing laws."

In the case of Borne v. Alexander Hardwood Co., Ltd., et al., 140 La. 315, 72 So. 979, this court held (quoting from the syllabus) that:

"According to the provisions of section 5 of Act No. 159 of 1898, as amended by Act No. 212 of 1910, before it was again amended by Act No. 199 of 1914, the privilege, securing the payment of debts contracted by a receiver, for money borrowed on certificates of indebtedness, or for necessary supplies purchased by the receiver, and used in carrying on the business of the corporation as a going concern under the orders of court, was superior in rank to the lien and privilege of the vendor of a part of the property of the corporation. Such debts contracted by a receiver are in the category of law charges, and are taxed as costs of court."

Appellants' alternative contention is based upon the erroneous assumption that the power of the courts in their administration of

receiverships as going concerns is conferred upon them by the provisions of section 5 of Act No. 159 of 1898. As we have stated, supra, the court's powers in the premises are not traceable to the act but to the Constitution; the act is merely declaratory of those powers.

The courts may take judicial cognizance of a fact, so universally known, that money cannot be borrowed in the business world without the payment of interest. The authority to borrow clothes the one so empowered with implied authority to pay such consideration therefor as is not prohibited by law, or fixed by legal contract, and the payment of such consideration is enforceable in the same manner and to the same extent as the principal sum, and is secured by the same preference and right of priority over the claims of other persons. In C. J., vol. 15, p. 810, it is said:

"A grant of jurisdiction implies the necessary and incidental powers essential to effectuate it, and every regularly constituted court has power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction, and the enforcement of its judgments and mandates."

For the reasons assigned the judgment appealed from is affirmed at appellants' cost.

O'NIELL, C. J., and ROGERS and ODOM, JJ., concur because there is no showing that the laborers' claims arose after the receiver was appointed.

ST. PAUL, J., absent on account of illness, takes no part.