**ARDIS & CO. v. VEAL–WINN CO.**

**Opposition of WINN.**

**No. 4570.**

Court of Appeal of Louisiana.
Second Circuit.

June 30, 1933.

276

Rusca & Cunningham, of Natchitoches, for appellant.

Phanor Breazeale, of Natchitoches, for appellee.

TALIAFERRO, Judge.

This case involves the ranking of privilege claims against Veal-Winn Company, Limited, an insolvent corporation. A receiver was appointed to the company in June, 1930. He was authorized by the district judge to continue the business and affairs of the company as a going concern, and to borrow not more than $2,000 "on certificates of indebtedness to be taxed as costs of court and to use said funds for purpose of paying the taxes due and owing on the property of the corporation * * * and the remainder of said sum shall be used from time to time as needed and required to replenish the mercantile stock with necessary plantation supplies in order to protect the credit heretofore extended to customers of the corporation who are engaged in producing crops." Ardis & Co., Inc., of Shreveport, La., the largest of all the firm's creditors, advanced the receiver about $1,700 authorized to be borrowed, in cash and merchandise, and accepted his certificates as security for payment thereof. No other certificates were issued.

In February, 1931, the receiver petitioned the court for authority to sell the assets of the company so that its affairs could be finally liquidated and settled. After due delays, this authority was granted and the assets sold according to law. A provisional account was filed by the receiver on August 7, 1931. No opposition having been made thereto, after regular proceedings, it was approved and homologated by the court on November 18, 1931, and the funds ordered distributed accordingly. This account shows there was a balance of $1,038.37 in the hands of the receiver from which he proposed to pay certain first privilege claims, including attorney's and receiver's fees, which would absorb $675.-15 of this balance, leaving $363.22 on hand. Among the listed privilege debts of the receivership, secondary in rank, appears $1,265,

balance due on receiver's certificates held by Ardis & Co., and $838.94 due A. E. Winn on salary account. Other privilege accounts, ranked secondarily by the receiver, ran the total to $2,781.34.

After the provisional account was approved by the court, the receiver collected $905.45 for account of the receivership, and he then filed his final account. It shows a balance of $1,253.30 on hand after deducting payment of the privileged claims authorized in the judgment approving the provisional account. Against this balance, other privilege claims, including commission of $200 for receiver, were charged, reducing the cash balance to $1,047.30. The receiver proposed to pay this amount to Ardis & Co. on the receiver's certificates held by it.

When the affairs of Veal-Winn Company, Limited, were placed in the hands of the receiver, there was due to A. E. Winn, Jr., a clerk and bookkeeper of the company, the sum of $838.95. He sued the receiver in the district court to have the amount due him recognized as a liability of the receivership estate and its privilege nature fixed. He secured judgment. The case was appealed to this court and affirmed. See Winn v. Veal-Winn Co., 16 La. App. 323, 134 So. 264. This judgment recognized the pre-existing lien and privilege on the stock of goods in the company's store when the receiver took charge.

A. E. Winn, Jr., planting himself upon the judgment in his favor, opposed the final account of the receiver in several respects. He prays that his judgment be recognized as a privilege on the goods in the store and on the fixtures also; that the two accounts filed by the receiver be recast, and he be required to file a true and correct account, in keeping with the facts disclosed by the record in the case; that his claim be paid by "preference over all other claims due by the receiver."

The lower court sustained the opposition to the extent of decreeing the opponent's claim as being superior in rank to the receiver's certificates held by Ardis & Co. and ordered same paid by preference and priority over the certificates. The receiver appealed.

As we appreciate the situation, the controversy between the receiver and Winn, the opponent, simply stated, is this: Does the privilege securing the receiver's certificates prime that of the opponent on the proceeds of sale of the goods in the store of Veal-Winn Company, Limited, at the time the receiver was appointed? The law has left no room for doubt on the question. The certificates must be paid first.

Under section 5 of Act No. 159 of 1898, the court may authorize the receiver of a corporation operated as a going concern to borrow or obtain money on certificates of indebtedness to be taxed as costs of court. The act says: "The sum so obtained shall bear a

first privilege on the property and income of the corporation." This section of the act was amended by Act No. 212 of 1910. The court, under this amendment, may authorize the receiver, in order to carry on the business of the corporation, "to borrow or obtain money on certificates of indebtedness to be taxed as costs of court," and further provides that, "the sum so obtained shall bear a first privilege on all of the property real or personal and the income of the corporation."

Act No. 199 of 1914 amends Act No. 212 of 1910 by providing that the receiver's certificate therein authorized shall prime all liens and privileges save that in favor of the vendor, which may be due and owing when the certificates issued.

■ Act No. 7 of 1926 amends the preceding acts on the subject by adding that the receiver's certificates shall not prime mortgages on lands and improvements of the estate, in existence when the receivership was ordered. This act seems to be the last expression of the legislative will on the subject. As the statutory law now stands, the amount of certificates issued by a receiver to carry on the business of the corporation, previously authorized by the court of competent jurisdiction, may be taxed as court costs, and the payment of same is secured by lien and privilege on all the assets and income of the corporation that prime all other liens and privileges and mortgages, save and excepting vendor's liens and privileges and mortgages on real estate and improvements securing obligations of the corporation due and owing at the time the certificates issued. Morelock v. Morgan & Bird Gravel Co., 174 La. 658, 141 So. 368.

The ranking of the privilege enjoyed by receiver's certificates has been considered by the Supreme Court in numerous cases. After each amendment to the act of 1898 was adopted by the Legislature new questions and issues arose to be passed on by the court. At present there appears to be no uncertainty as to the status of the privilege with respect to the property, real and personal, and income, of the receivership estate.

In Borne v. Alexander Hardwood Company, 140 La. 315, 72 So. 979, it was held that the privilege securing payment of receiver's certificate primed the vendor's lien and privilege on a part of the corporation assets. This decision was rendered after the adoption of Act No. 199 of 1914, but the suit arose while the 1910 act was in effect. The decision would doubtless have been otherwise had the 1914 act governed.

Teutonia Bank & Trust Co. v. Security Brewing Co., 137 La. 1046, 69 So. 833, involved the ranking of the receiver's certificates and bonds secured by mortgage on the corporation's real estate, as against the proceeds of the sale of the real estate so mortgaged. It was held that the certificates primed the bonds. This case was also controlled by the 1910 act.

The case of International Harvester Company v. Union Irrigation Co., 150 La. 405, 90 So. 741, is decisive of the question we are discussing. One Schell was general manager and overseer of the company placed in the hands of a receiver, before that even took place. He assigned his account, and the assignee contended, on trial of receiver's provisional account, that the privilege on the crop securing payment of said salary primed that enjoyed by the receiver's certificates. The district court sustained this position, but the Supreme Court on rehearing reversed the holding. The court (pages 428, 429 of 150 La., 90 So. 741, 749) said:

"The judgment appointing the receivers was rendered April 30, 1914, and, as the $1,200 claim of Schell for wages as general manager and overseer was for services rendered from November 1, 1913, up to May 1, 1914, it is clear that Schell's claim is based upon services rendered prior to the receivership, and could not outrank the costs of the receivership, nor could it be a privilege superior to the vendor's privilege upon the movables.

"Section 5 of Act 159 of 1898, as amended and re-enacted by Act 212 of 1910, as amended and re-enacted by Act 199 of 1914, answers that question in favor of the debts represented by the receivers' certificates, which, by the Act of 1910, 'bear a privilege on all of the property real or personal and the income of the corporation to be paid by preference and priority over all other creditors,' save the vendor's lien and privilege which may be outstanding, due and owing at the time the certificates are issued. It therefore follows that the privilege of an overseer upon the year's crop for balance of salary is primed by the vendor's privilege and by that of the holder of a receivers' certificate."

In the very recent case of Receivership of Baldwin Lumber Company, Ltd., 176 La. 909, 147 So. 31, it was held that a labor lien was primed by the privilege securing receiver's certificates.

■ It is obvious from a reading of these opinions that the acts of the Legislature declaring and fixing the rank of the privilege created to secure payment of receiver's certificates, issued to obtain money or supplies to enable the receiver to carry on the business of the corporation as a going concern, are construed and enforced as written. The Legislature, being the creator of liens and privileges, is eminently possessed with the power to rank them as, in its wisdom, it deems best. When a receiver is authorized by the court to operate the business of a financially crippled corporation as a going concern, that presupposes the hope to revive it financially, or to improve its condition in

such way and to such extent that its creditors' interests may be better protected and preserved. Without financial aid to enable the receiver to carry on the company's business, of course, it cannot be operated as a going concern. Hence, the lawmaker has ordained that credit or money may be obtained for that purpose, on the receiver's obligations, in the form of certificates, secured, with the exceptions herein mentioned, by first lien on the property and income of the corporation.

The privilege securing certificates of the receiver primed that in favor of the clerk and bookkeeper of the corporation on proceeds of sale of the goods and merchandise owned by it when the receivership began.

It is true, as argued by counsel of the opponent, that the amount and the privilege nature of the claim of opponent has been judicially determined, but the rank of such privilege was not fixed as against any of the property of the insolvent corporation. Such question may only be determined when timely and properly presented.

The judgment of the lower court is reversed, annulled, and set aside, and there is now judgment in favor of John A. B. Smith, receiver, approving and homologating his final account, and authorizing him to make disbursement of the fund in his hands, as proposed by the tableau of distribution incorporated in said final account.