### CHARLES DENNERY, Inc., v. BARKER BAKING CO., Inc. *

### No. 16259.

Court of Appeal of Louisiana. Orleans.

March 9, 1936.

---

*Rehearing denied April 6, 1936.

Stirling Parkerson, of New Orleans, for appellant Emmett Parkerson.

Dufour, St. Paul, Levy & Miceli and Lazarus, Weil & Lazarus, all of New Orleans, for appellee.

JANVIER, Judge.

This matter arises by opposition to an account of a receiver. Emmett Parkerson, trustee of the estate of Mrs. Mary Elizabeth Lyman Parkerson, his deceased wife, and natural tutor· of his minor children, is the opponent, contending that, as lessor of a portion of the property in which the receiver has for years conducted a baking and confectionery establishment, he is entitled to a privilege on the proceeds of the property formerly contained in the premises leased from him, and also to a proportionate share, along with other creditors of the receivership, in the proceeds of the sale of the property contained in the other portion of the establishment which was not leased from him. We shall hereafter refer to Parkerson either as "lessor" or as "opponent."

The facts in the main are not in dispute. The principal controversy arises solely over the question of what interpretation should be placed on the actions of the parties during the conduct of the receivership. The lessor contends that at no time did his actions constitute a waiver of his lessor's lien, and the receiver contends that the operation of the business, as a going concern, was largely the result of the wishes of the lessor and the other lessor, whose property was also involved, that their properties be not vacated and that the business be conducted by the receiver in the hope that mutual advantage would result to the lessors and to the estate which was being conducted by the receiver.

The facts are well stated in opponent's brief as follows:

"On May 12th, 1932, John A. Maylie, on a petition filed by Charles Dennery, Inc., and acquiesced in by the Barker Baking Co., Inc., was appointed receiver of said Barker Baking Company, Inc. There was no interruption in the business of the defendant corporation as the result of this appointment. Maylie had been up to that time the manager of the business. Immediately upon being appointed receiver, he qualified as such and, on the same day, an order was entered by the Court, authorizing him to carry on the business.

"At that time, the defendant corporation was occupying the premises No. 630 Canal St. owned by Mrs. Laura C. Jamison and was also occupying the rear portion of No. 632 Canal St., owned by the Estate of Mrs. Emmett Parkerson. The lease on the Parkerson property ran to September 30th, 1935, and provided for a rental of $300.00 per month which the Barker Baking Co. had been paying regularly month by month. After his appointment, the receiver continued to occupy the premises and continued to pay the stipulated monthly rental of $300. each month for five months thereafter, or through the month of September, 1932.

"It becoming evident in the fall of 1932 that the receiver could not, under the existing conditions, continue to pay this rent and the rent accruing on the adjoining building, an arrangement was effected, after protracted negotiation, in January, 1933, under which, beginning with December, 1932, the receiver was to pay at the end of each month an amount equal to four per cent of the gross sales made in the leased premises during that month, making a similar payment to the owner of the adjoining building calculated on the gross amount of the sales made in that building. These payments, it was

agreed, were to be placed to the receiver's credit without prejudice to such rights as the lessors might have to demand rent in accordance with the terms of their leases. The agreement was not entered into for any definite period but it was understood that opponent, as well as the other landlord, might terminate it and take action to enforce such rights as he might have under his lease at any time. (See Admission dated December 7, 1934, in Record.)

"Under this arrangement, the receiver made a series of payments to opponent aggregating $462.29, the last of these having been made on September 15th, 1933, and having represented four per cent of the gross sales in the month of July, 1933. (See above Admission.) Despite the cessation of these payments, opponent made no attempt to disturb the receiver in his occupancy of the premises until March 17th, 1934, when he notified the receiver through his counsel that, unless the receiver could, on or before the first of April, resume the four per cent monthly payments and at the same time pay all those that were past due, opponent would be compelled to take proceedings to have the property in the leased premises sold and the proceeds applied on the rent accrued under the lease. (See copy of Letter of March 17, 1934, in Record.)

"As the result of this letter, a series of conferences were held and eventually it was determined ·that there was nothing else to do but to have a re-appraisement made of the assets in the receiver's hands, sell them, and bring the receivership to a close. Appropriate proceedings were taken, and the property was sold on September 20th, 1934. It brought only $2,790.00, of which $190.00 represented the proceeds of the accounts receivable, $1,725.00 the proceeds of the property in the Jamison Building, and $875.00 the proceeds of the property in the Parkerson building. (See Auctioneer's Proces Verbal.)

"On October 30th, 1934, the receiver filed his final account."

This account showed that the total proceeds from the sale of the property amounted to $2,790, and that the net proceeds after the deduction of the auctioneer's commission amounted to $2,595.15, and that out of this the receiver proposes to pay taxes, attorney's fees, appraisers' fees, notarial fees, and receiver's commissions amounting to $1,972.67, by preference and priority, and to then distribute the remaining balance, amounting to $622.48, among the various claimants, including the present opponent, on a pro rata basis.

Opponent makes two contentions: First, he maintains that out of the proceeds of the property which was contained in the building leased from him he should be paid by preference and priority over all other claimants except the city and state, which claims for taxes he concedes should first be paid; and, second, he asserts that, after being charged with $331.13, the amount he avers he should receive as a result of the first portion of his opposition, he should be recognized for the balance of his claim as "a creditor of the receivership with a general privilege against all the other assets."

Conceding, arguendo, that the opposition may be construed as raising these points, we will proceed to consider them.

Although much time and space has been devoted to a discussion of the amount of the fees for which the attorneys for the receiver have been placed upon the account, no attack is made upon the amount of those fees, and counsel for opponent disclaims any intention of contesting the correctness of the quantum thereof.

■ The controversy in the main depends upon whether or not the actions of the lessor must be interpreted as indicating a tacit agreement on his part that he would take the risk of the experiment of permitting the receiver to continue the business in the leased premises, or whether his actions were such as he did not in any way constitute a waiver of the lien and privilege which, by our Civil Code, art. 3218, is accorded to a lessor.

Whatever may have been the intention of opponent throughout the negotiations, we cannot view those negotiations and the subsequent conduct of opponent and of the other lessor otherwise than as evidencing a desire that the operations continue, and as evidencing also an understanding that they were interested to some extent in the success of the receiver's operation of the business.

The lessors might, at any time, have exercised their rights, and could have forced a summary sale of the property which was subject to their respective liens. They chose not to do so. They permitted the receiver to conduct the business which, if successful, would have inured to their benefit, at least to the extent of producing the rent money to which they were entitled, and this, no doubt, was a matter of grave concern to them, since the record leaves no room for doubt that, had the respective properties been vacated, no other tenants would have been available.

In International Harvester Co. v. Union Irr. Co., 150 La. 405, 90 So. 741, 751, the court considered such a situation and said: "Instead of exercising this summary remedy, in which case it would have incurred the costs only of this particular sale and proceeding, the International Harvester Company permitted its property upon which it had a privilege to remain under the dominion, control, and operation of the receivership, taking the risk of such experiment, and therefore it subjected its property to the costs and charges of the receivership, the same as other creditors pursuing the same course."

We see no distinction resulting from the fact that there it was a vendor's lien which might have been enforced summarily, while here it was a lessor's lien. In fact, in Mr. & Mrs. W. G. Salaun v. Their Creditors, 106 La. 217, 30 So. 696, 697, a case which we shall later discuss in connection with another phase of this matter, the court, in discussing the preference which should be accorded to the fee of attorneys for effecting a sale of the estate of an insolvent, and in also discussing whether those charges should prime the claim of a lienholder, said: "The rule should be the same whether a vendor or a lessor be concerned."

In Teutonia Bank & Trust Company v. Security Brewing Co., 137 La. 1046, 69 So. 833, is found an enunciation of the principle later announced in the International Harvester Case from which we have quoted. There, rights of a mortgage holder who did not oppose the issuance of receiver's certificates by which funds for the operation of the business were secured were permitted by the court to be subordinated to the rights of the holders of the certificates. See, also, Borne v. Alexander Hardwood Co., 140 La. 315, 323, 72 So. 979; In re Clover Ridge Planting & Mfg. Co., 178 La. 302, 151 So. 212; Consumers Oil Co. v. Perry Transfer & Storage, Inc. (La.App.) 162 So. 468.

█ We find no fault with the refusal of the district court to recognize the claim of the opponent as superior to the other costs of operations, since those costs of operation, in our opinion, should be regarded as costs necessarily incurred "for selling the movables" and since costs so incurred are superior to the claim for rent. Civil Code, art. 3256, provides: "Whatever may be the privilege of the lessor, charges for selling the movables subjected to it are paid before that which is due for the rent, because it is these charges which procure the payment of the rent."

█ Whether the attorney's fees, a portion of which were given priority over the claim of the lessor, should have been so ranked, depends upon whether those fees may be classified as necessary costs or charges "for selling the movables." Opponent points to the case of Salaun v. Their Creditors, supra, as authority for the contention that only that portion of the fee which was earned for securing the order of sale should be ranked as a necessary cost of sale, and he points out the following language which is found in that opinion: "The attorney at law, whose services were necessary in order to put the court's action into motion, should also be recognized as priming the lessor and vendor only to the extent that the services were necessary in matter of the sale of the property."

But counsel for the receiver maintains that that decision is susceptible of interpretation favorable to his contention, and that in the Salaun Case there had been no acquiescence by the lessor in the continued occupancy of the premises, and that the services of the attorney except those which provoked the sale were of no interest or benefit to the lessor, whereas here the services were rendered in an effort to assist the receiver to successfully conduct the business, the direct result of which successful operations would have inured to the benefit of the lessor, and we think that this is true. We find in the record an admission to the effect that: "* * * The business was carried on by the Receivers in the premises under orders of this Court, and with the acquiescence and consent, both in court and out of court, of the two lessors who were kept at all times fully advised of the progress of the receivership and action taken by the Receivers."

Nor can the following further admission be overlooked:

"Particular efforts were made to preserve the business as a going concern, in the hope that it might be sold as a going concern and thereby afford protection to the receivership and landlords, because the landlords were unable at that time, owing to the great economic depression in this city, to procure other tenants for the buildings.

"In these efforts it was always understood that at any time the landlords could procure a tenant for either one of the buildings, that the Receiver would vacate the premises and

516

return back the premises to the landlord, with as little delay and expense as possible."

We think, therefore, that on both points the contentions of the opponent should be rejected.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed at the cost of appellant.

Affirmed.

McCALEB, J., not having heard the argument, takes no part.