141 So. 368

MORELOCK v. MORGAN & BIRD GRAVEL CO., Inc.

No. 28750.

Nov. 3, 1931.

Rehearing Denied March 30, 1932.

Cook & Cook, of Shreveport, for appellant Southern Iron & Equipment Co.

Wilkinson, Lewis & Wilkinson and S. L. Herold, all of Shreveport, for appellant J. P. Wilkinson.

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, for appellee T. G. Roberts.

OVERTON, J.

The Morgan & Bird Gravel Company, Inc., was placed in the hands of a receiver on August 31, 1925. The account of the receiver was filed on January 27, 1927. It ranked the indebtedness of the corporation as follows:

First, the receiver's fees, attorney's fees, court costs, and receiver's certificates; second, accounts payable, incurred by the receiver; third, T. G. Roberts' subrogation to state and parish taxes, amounting to $4,321.-06; fourth, mortgage indebtedness, including a claim of the Southern Iron & Equipment Company for the sum of $6,812; and, lastly, the ordinary indebtedness of the corporation, antedating the receivership. There is not sufficient money in the receivership to satisfy all the claims listed as entitled to the first rank of priority, but T. G. Roberts and the Southern Iron & Equipment Company have each filed oppositions to the receiver's account, claiming relief from the situation in which the account places them.

Roberts alleges, in his opposition, that his claim is one for state and parish taxes, assessed against the corporation, for the year 1924, and paid by him on August 8, 1925, prior to the appointment of the receiver, with subrogation both legal and conventional, the act of conventional subrogation being duly recorded in the mortgage records of Webster parish. He asks to be paid, as the subrogee of the state and the parish of Webster, by preference over all other creditors. The receiver denies that Roberts is entitled to a privilege at all, the property on which the taxes are claimed to have been paid being personal property, and, if he should have a privilege, the receiver denies that it ranks, or is equal in rank, to the privileges, securing the claims, appearing on the final account as receiver's fees, receiver's certificates, attorney's fees, court costs, and accounts payable, incurred by the receiver.

We think the state and the parish of Webster each had a privilege on the personal property against which the taxes were levied —the parish, under Act No. 119 of 1882 and section 14 of article 10 of the Constitution of 1921, which, together, provide that all laws applicable to the collection of state taxes apply alike to the collection of municipal, parochial, and other taxes; and the state, under section 11 of article 10 of the Constitution of 1921, and section 49 of Act No. 170 of 1898.

Section 11 of article 10 of the Constitution of 1921 directs that:

"Taxes on movables shall be collected by seizure and sale by the tax collector of the movable property of the delinquent, whether it be the property assessed or not, sufficient to pay the tax."

Section 49 of Act No. 170 of 1898, page 370, provides, among other things, that:

"Whenever, any sheriff, constable, marshal, receiver, liquidator, syndic or other judicial or court officer or functionary shall take possession of personal property it shall be his duty to pay at once all the taxes that may be due or become due upon the same, and if he fails to do so he shall become responsible personally and upon his bond for the payment of the same. * * *

"The Tax Collector shall also have the right to proceed by rule at any time in the Court having custody of personal property or the proceeds thereof, to compel such sheriff, constable, marshal, receiver, liquidator or syndic to compel the payment of all taxes due upon the property, without waiting for proceedings on final account or tableau of distribution."

In Cleveland Steel Co. v. Joe Kaufman Co., 155 La. 529, 99 So. 428, this court, after quoting the foregoing provisions, said that two things seem clear from them, namely, first, that all movable property of the delinquent, whether assessed or not, is liable for any taxes due by him thereon, and, secondly, that the tax collector has the right to insist upon the payment of the taxes at once, and in preference to all others, out of the personal property of the delinquent, no matter by whom held. The court also said, later on, that the right to be paid by preference out of property, or its proceeds, is nothing else but a first privilege on the property or its proceeds.

When the law calls upon such an official as a receiver or a syndic, meaning a syndic of an insolvent estate, to pay taxes, at once, on personal property of the receivership or estate administered by the syndic, due or that may become due, without any conditions or qualifications whatever, dealing with an estate, which in one instance is not uncommonly insolvent and, in the other, always so, and impowers tax collectors to enforce a compliance with this duty by appropriate methods, without waiting for proceedings on final account, the conclusion is inescapable that the law thereby confers on the state, in unmistakable terms, a privilege on personal property, to secure the payment of the taxes due, or that may become due, thereon, and that this privilege primes all others, for no exceptions are made as to the obligation of the officials, named, to pay, no matter what kind of obligations, and how many, are due by the estate. It is a matter of no consequence, as appears from the context of the law, whether or not the taxes fell due before the official took possession of the property.

■ It is urged, however, that, in so far, at least, as relates to the rank of the receiver's certificates, such a conclusion as the one just drawn, concerning the rank of the privilege of the state on personal property, to secure its taxes, is repealed in part by Act No. 199 of 1914, page 381, affecting most of the certificates, which repeal is repeated by Act No. 7 of 1926, affecting the rest. Act No. 199 of 1914, after providing that the court may authorize the receiver to borrow or obtain money on certificates of indebtedness, to be taxed as costs of court, provides that:

"The sum so obtained shall bear a privilege on all of the property real or personal and the income of the corporation to be paid by preference and priority over all other creditors of the corporation,—save the vendor's lien and privilege which may be outstanding due and owing at the time the certificates are issued, which vendor's lien and privilege shall remain unimpaired and retain its present status as provided for by existing laws." The act of 1926, which amends and re-enacts the act of 1914, makes no change, so far as affects the present issue, in the act amended and re-enacted. Its purpose seems to have been to add mortgages on real property to

the clause, creating the exception to the rank, given certificates.

These acts do not affect section 49 of the act of 1898, conferring, in favor of the state, a privilege, above all other privileges, on personal property for taxes due. The Legislature is not here legislating concerning the state. The state is impliedly excepted from the acts of 1914 and 1926. It is not here legislating against itself, for the Legislature, after it has accorded the state a privilege, is not presumed to sacrifice it, in the interest of private persons, to the injury of the public fisc. There should be an unmistakable intention shown to make such sacrifice, which does not here appear. These acts are easily reconcilable.

■ The state is no longer interested in these taxes, for Roberts has paid them, and was conventionally subrogated, at the time, to the rights of the state and the parish, by the tax collector, pursuant to the provisions of section 89 of Act No. 170 of 1898, page 384, which expressly authorize him to receive payment from any person, other than the person in whose name the property is assessed, and to subrogate the payee of the same to all rights, liens, and mortgages of the state and parish. Hence, there can be no question that Roberts was subrogated conventionally to the privileges of the state and the parish of Webster, whether he was subrogated or not to their special remedies for enforcing the taxes, which is beside the question here properly at issue, the question concerning only the substantial rights conferred by the subrogation.

Roberts also urges that he was subrogated to the rights of the state and the parish by

operation of law, because, at the time of payment, he was both a stockholder and a creditor of the corporation. It is not questioned that he was not such. Being a creditor whose claim was primed by the claims of the state and the parish, he was subrogated to these privileges by operation of law, by their payment. Civ. Code, art. 2161; Dickson v. Hynes, 36 La. Ann. 685.

■■ The contention is urged that Roberts is precluded from urging his claim in opposition to the holders of the receiver's certificates, because he did not object to their issuance, although he was a party to the receivership proceedings. There was no occasion for him to object to preserve his privilege. The law informed the holders of the certificates as to their rights against the state and the parish, and as to the rights of whoever might be or was their subrogee. The declaration in the law, which we presume was carried into the certificates, that they bear a first privilege, should not have been misleading to the purchasers of these instruments. The contention is also urged that Roberts precluded himself from asserting his claim by not asserting it earlier. Without reference to his attempts to assert it earlier, it is sufficient to say that he was not called upon to assert it, until it was about to prescribe, or until, in order to collect it, it became necessary to do so in the receivership proceedings.

The opposition of the Southern Iron & Equipment Company, which is next presented, sets forth that, upon a date, prior to the receivership, it sold to the defunct corporation a locomotive and a steam shovel, under a contract, conditioned that the title to them should remain in the vendor until the pur-

chase price, which was partly cash and partly represented by promissory notes, should be paid in full; that some of the notes were paid prior to the receivership; that for the balance, namely, $6,812, opponent has a vendor's privilege on the fund, representing the purchase price of the property, which entitles it to be paid by preference out of such fund over all others; that, should the court consider that opponent has no vendor's privilege, then its conditional contract of sale should be recognized, as its property, and, accordingly, that the property should be delivered to opponent.

Opponent, from the beginning of the receivership, made efforts to repossess itself of the property sold by it, or else to have the property sold and to be paid by preference out of the proceeds of sale. The receiver showed a willingness to have the property sold, but from one cause or another, over which neither the receiver nor opponent had control, the sale fell through, each time, before its date arrived. Finally, the property was offered, under separate appraisement, at the same time, as we take it, as other property of the estate, and was bid in by opponent for the balance due on it. The property, however, was not delivered then. This failure to deliver was caused by the refusal of the court to permit the delivery of the property, due to the fact that, at the time of the sale, there was a proceeding pending to force the corporation into bankruptcy. Later, apparently without notice and without an order of court, the receiver, through his attorneys, entered into a contract with opponent, through its counsel, reciting as the consideration for the contract the amount of the claim of opponent; the fact that, by order of court, the receiver offered the property, here involved, as well as other property, for sale, at public auction, and that opponent bid the amount of its claim thereon; the fact that, while the court permitted the property to be offered, it refused to permit the consummation of the sale, because of the pendency of the bankruptcy proceeding; the fact that the bankruptcy proceeding had been pending for a number of months without a decision thereon, and that, in the meantime, the property was depreciating in value, and closes with an agreement between the receiver and opponent, by which the latter is authorized to repossess itself of the property, the repossession to be in satisfaction of opponent's claim, opponent to indemnify the receiver against all liability for his action. This contract was concurred in by the attorneys for the petitioners in bankruptcy, with the exception of the assertion as to the depreciation of the property.

This contract, in our view, is not entitled to be accorded effect. A contract, of such nature as the present, executed without an order of court, sanctioning its execution, is null and void. A receiver should not be permitted of his own motion, to the injury of creditors, to surrender property of the receivership to a creditor in satisfaction of his debt, for, in the distribution of the funds of the receivership, that debt may be ranked by other claims, and the proceeds of that property needed to satisfy them, in whole or in part. The parties to the contract evidently recognized the danger of their act, else why the provision in the contract for indemnity? The property in controversy has been received by opponent, and the fund, arising from its ad-

judication to opponent, at receiver's sale, must be treated as before the court.

Opponent cannot now, whatever its rights might have been at one time, claim the property under the conditional contract of sale, under which it delivered it to the corporation. This is so, because the contract gives opponent one of two options, either to repossess itself of the property upon the failure of the corporation to pay the purchase price or any part of it, and to retain the amount paid, or to enforce payment of the balance due, and opponent has elected the latter course by bidding the property in at receiver's sale. He cannot now recede from the election made by him. At one time, perhaps, defendant might have repossessed himself of the locomotive, under the laws of this state, by virtue of his contract, though we doubt this as to the steam shovel, which was probably intended for use, not as railroad equipment, but in gravel pits, and this is so, although, ordinarily, what are termed in our sister states "conditional sales," are, under the laws of this state, recognized only as conveying absolute title to property. By statute, however, conditional sales of railway and street railway equipment are entitled to full force and effect. Act No. 111 of 1894, p. 149. This also seems to be the case, as relates to tank cars, not involved here, by another, though perhaps an unnecessary, act, namely, Act No. 119 of 1918, p. 192.

We now come to the vendor's privilege, claimed by opponent. While it does not clearly appear from the record that opponent had a vendor's privilege on the property sold by it to the corporation, yet, for the purposes of this case, we propose to assume that it had, and that it now has one on the proceeds of the sale of that particular property.

Opponent bases its contention that its vendor's privilege primes the receiver's certificates on that part of Act No. 199 of 1914, which we shall repeat, reading as follows:

"The sum so obtained [referring to money received on receiver's certificates] shall bear a privilege on all of the property real or personal and the income of the corporation to be paid by preference and priority over all other creditors of the corporation,—save the vendor's lien and privilege which may be outstanding due and owing at the time the certificates are issued, which vendor's lien and privilege shall remain unimpaired and retain its present status as provided for by existing laws."

While the expression, "the vendor's lien and privilege," appearing in the exception in the foregoing quotation, is sufficiently broad to include the privilege on both movable and immovable property, yet an analysis of the provision, in which it appears, shows that it has reference only to the vendor's privilege on immovable property. To refer it to immovable property is necessary to prevent a strange situation, never contemplated. To illustrate, the lessor's privilege, which affects only movable property, primes the vendor's privilege, and did so when the act was passed. The act does not purport to raise the rank of the vendor's privilege. To the contrary, it expressly retains the status of that privilege, as it exists under existing laws. The act, however, does, by implication, rank receiver's certificates above the lessor's privilege, which, in its nature, affects only movable property, by placing the privilege for receiver's certificates above all

others. For instance, if a lessor were also in this suit, asserting his lessor's privilege on the proceeds of the property, if it were held that the vendor's privilege, mentioned in the act, referred to the vendor's privilege on movable property as well as immovable property, the court could not decree the one asserting the vendor's privilege to be entitled to the fund, because the lessor, as provided by law (Civ. Code, art. 3263) primes the vendor, and the status of the vendor, the act provides, shall remain intact. It could not grant it to the lessor, because the receiver's certificates, as provided by the act, prime the lessor. Therefore the only construction that can be made, consistently with law, is to rule that the vendor's privilege, named in the act, is the vendor's privilege on immovable property, which, in reality, is a higher privilege than the one on movable property.

In the Succession of Cooley, 26 La. Ann. 166, a similar question arose. The contest there was one concerning the relative rank of the privilege of the surviving widow, under article 3252 of the Civil Code, and the vendor's privilege on movable property. This article provided then, as it does now, that the $1,000 to the widow should be "paid in preference to all other debts, except those for the vendor's privilege and expenses incurred in selling the property." The expression, "the vendor's privilege," found in this article, is as broad and unqualified as the same expression is in the act of 1914. The court there found by a process of reasoning, which we have adopted, that a proper construction of the article demanded that the expression, "the vendor's privileges," found in it, be held to mean such privileges on immovable property.

In the act, amending and re-enacting the act of 1914—Act No. 7 of 1926—which affects two of the certificates, it seems even clearer that the expression, "the vendor's lien and privilege," refers only to such privilege on immovable property. The purpose of that act, as stated, was to add another exception to the rank of receiver's certificates, namely, mortgages on immovable property. The fact that this exception is stated first, and shows that the Legislature's attention was there directed to immovable property, followed in the same sentence by the exception, relative to vendor's privileges, the two clauses, making the exception, being connected by the conjunction "and," strongly suggests that the Legislature's attention, in treating of the vendor's privilege, was still directed to immovable property.

■ Our conclusion is that the vendor's privilege on movable property does not prime the privilege of the holder of certificates. We are also of the opinion that it does not prime the privilege for attorney's fees, or those securing receiver's fees, court costs, or bills payable, incurred by the receiver, which last are costs of the receivership in running it as a going concern, and may, in a sense, be considered as court costs.

■ As to the contention that neither the attorneys for the receiver nor the receiver himself can assert their claims against opponent, because they consented to the delivery of the property, involved in this opposition, to opponent, in satisfaction of his claim, we think that, in this instance, the contention cannot be sustained, if sustainable in any. The amounts allowable for those fees are not in contest here, and to sustain the contention might, so far as appears, throw a burden

upon others, who had no connection with the delivery. This is also substantially true as to the contention that Roberts, whose opposition was first considered, abandoned, in effect, his claim against the present opponent. The fact that the present opponent, the Southern Iron & Equipment Company, is listed in the account as a mortgage creditor, instead of a creditor with vendor's privilege, works no injury, under the circumstances, as it does not change the order of opponents payment, nor the amount, if anything, coming to it.

The trial judge rendered judgment, sustaining the opposition of Roberts, to the extent of placing him on the list of debts of the corporation to be paid first and by preference out of the funds, coming into the hands of the receiver from the proceeds of the sale of the property in Webster parish, subject to the opposition of S. L. Herold, et al. based on different grounds, and not yet tried, and rejecting the opposition of the Southern Iron & Equipment Company.

The judgment, appealed from, is affirmed.

O'NIELL, C. J., and ODOM, J., dissent.

O'NIELL, C. J. (dissenting).

I do not subscribe to the ruling on either of the oppositions to the account or statement filed by the receiver.

I do not find any warrant for the ruling that the expression, in Act No. 199 of 1914 and Act No. 7 of 1926, save and excepting "the vendor's lien and privilege which may be outstanding," does not mean a vendor's lien on movable property, but means only a vendor's lien on immovable property. The

statute is dealing with the lien on both kinds of property, because its language is: "The sum so obtained shall bear a privilege on all of the property real or personal and the income of the corporation to be paid by preference and priority over all creditors of the corporation, save and excepting the mortgage on lands and improvements thereon securing any indebtedness, or obligation, and the vendor's lien and privilege which may be outstanding, due and owing at the time certificates are issued, which mortgage, vendor's lien and privilege shall remain unimpaired and retain their present status as provided by existing laws." The exception of mortgages on lands and improvements thereon was not in the act of 1914. This exception was the only change made in the amending act of 1926. If the Legislature had intended to except only the vendor's lien on lands and the improvements thereon, but not on personal property, the Legislature would have said so, as it did with regard to mortgages on lands and the improvements thereon. The decision rendered in the Succession of Cooley, 26 La. Ann. 166, is not appropriate to this case. That decision was arrived at because it was thought to be the only escape from a dilemma which was thought to have resulted from the ruling in Succession of Bouvet, 25 La. Ann. 431, that the $1,000 due to a widow or minor child in necessitous circumstances should be paid in preference to a claim secured by the lessor's lien, notwithstanding the lessor's lien was superior in rank to the vendor's lien, and notwithstanding the vendor's lien was superior in rank to the claim of the widow or minor child in necessitous circumstances. We are not called upon to solve any such problem

in this case; and, if we were, the solution would not consist in saying that a vendor's lien on personal property is not a vendor's lien, within the meaning of Act No. 199 of 1914 and Act No. 7 of 1926.

## On Rehearing.

ODOM, J.

We granted a rehearing in this case in order that we might further consider the opposition of the Southern Iron & Equipment Company, Inc.

The pertinent facts relating to the transactions which took place between opponent and the Morgan & Bird Gravel Company prior to and during the receivership proceedings were stated in our former opinion, and we shall not repeat them here.

The first question to be considered is whether the contract between this opponent and the Morgan & Bird Gravel Company, Inc., was a sale of the equipment or whether opponent remained the owner thereof with right to repossess it without legal process; second, if the transaction amounted to a sale vesting immediate title in the Morgan & Bird Gravel Company, has the receiver of that concern parted with title thereto; and, third, if the transaction amounted to a sale, in which event opponent has a vendor's privilege on the equipment for the unpaid balance of the price, then does its vendor's privilege rank the privilege of the holders of the receiver's certificates?

1. The contract between the Southern Iron & Equipment Company, Inc., opponent, is in the record and speaks for itself. It shows on its face that it was entered into in the state of Louisiana, parish of Caddo, on March 7, 1924, by and between "Southern Iron & Equipment Company of Atlanta, Georgia, * * * hereinafter called the *vendor*, and the Morgan & Bird Gravel Co. of Shreveport, Louisiana, *hereinafter called the vendee*." (Italics ours.) It provides:

"That the *vendor* has this day delivered to and hereby agrees to sell to the *vendee* for the consideration of Thirteen Thousand Two Hundred Fifty Dollars upon the terms and conditions hereinafter set forth the following personal property to wit." Then follows a description of the property. It further recites: "The vendee agrees to and does receive the property and to pay the *vendor* therefor at *vendor's* place of business in Atlanta, Georgia, the said *purchase price* on the following terms." It recites that $2,500 was paid in cash, "the balance being evidenced by 12 notes given contemporaneously herewith." Then follows a statement of the notes, each for $916, the first maturing on June 7, 1924, and one on the 7th day of each consecutive month thereafter down to May 7, 1925. The notes were to bear interest at 6 per cent. from the date of sale, provided for all costs of collection including 10 per cent. attorneys' fees if placed in the hands of an attorney for collection, and further provide that, if any one of the notes should become due and remain unpaid for thirty days, "then the vendor or holder shall have the right to declare them all due."

Then follows the following stipulation:

"It is agreed that title to said described personal property shall remain in and be vested in said Southern Iron & Equipment Company, *the vendor*, and said vendor shall have the complete rights and liens to and on said

property as above described, legally established and recognized by law as belonging to a vendor under contract of purchase and sale such as this. Said title to said property is to be and remain vested in said vendor as hereinabove agreed, until all of said purchase money notes, with stipulated interest, are paid in full."

This contract was entered into in this state and was to take effect here. It is therefore governed by the laws of this state. Code Prac., art. 13, Civ. Code art. 10.

It has all the earmarks of a complete sale. There was a thing, a price in current money and consent of the parties. Civ. Code., art. 2439.

All through, the contract refers to the Southern Iron & Equipment Company as the vendor, and the Morgan & Bird Gravel Company as the vendee or purchaser. It provides that the "vendor shall have the complete rights and lien to and on said property legally established and recognized by law, as belonging to a vendor under contract of purchase and sale, such as this."

Construing the contract as a whole, the stipulation that title to said property should *remain* vested in the vendor may as well have been left out. Such a stipulation in a Louisiana contract has no effect, as there is no such thing as a conditional sale under our laws. It is legally impossible under our laws for the title to a thing to remain vested in the vendor.

The contract provides that the vendor shall have a lien on the property. If the title to this property remained vested in the Southern Iron & Equipment Company, it could have no lien thereon, for one cannot have a lien on his own property.

The Morgan & Bird Gravel Co., Inc., paid $2,500 cash as part of the purchase price of this property and unconditionally bound itself to pay the balance.

In Barber Asphalt Co. v. St. Louis Cypress Co., 121 La. 152, 46 So. 193, this court held: "A so-called conditional sale, or sale by which the vendee is to become at once unconditionally bound for the price, and the vendor is to continue to be the owner of the property until the price is paid, is not possible under the laws of this state." To the same effect, see State ex rel. Bulkley v. Whited & Wheless, 104 La. 125, 28 So. 922; Adams Machine Co. v. Newman, 107 La. 702, 32 So. 38; Overland Texarkana Co. v. Bickley, 152 La. 622, 94 So. 138; Byrd v. Cooper, 166 La. 402, 117 So. 441; Grapico Bottling Works v. Liquid Carbonic Co., 163 La. 1057, 113 So. 454.

This contract was a sale under our laws, and opponent had a vendor's lien on the property for the balance of the purchase price amounting to $6,812.

■ 2. A receiver was appointed for the Morgan & Bird Gravel Co., Inc., and he operated it as a going concern for a considerable period of time. He took over and held possession of all its property, including the equipment under consideration. The second question is whether he ever legally parted with title to this particular property.

The property was offered for sale at public auction twice by the receiver by order of court and was bid in by the opponent at the first offering, but the sale was never consummated. T. G. Roberts bid it in at the second offering and assigned his bid to opponent. The court refused to permit the first sale to be consummated on account of bankruptcy

proceedings then pending against the corporation, nor did it approve the sale to Roberts. The title to the property therefore did not pass from the receiver by virtue of these attempted public sales.

But later on, the receiver with Roberts' consent entered into a private agreement which was reduced to writing, with this opponent reciting that opponent held a claim for $5,812, with interest and attorney's fees against the Morgan & Bird Gravel Company, Inc.: that, by order of the court, the receiver offered this property for sale at public auction, and that opponent bid the amount of its claim thereon (this bid was never confirmed), but the receiver was ordered by the court "to withhold the consummation of the sale pending the outcome of the bankruptcy proceedings"; and that:

"Whereas the bankruptcy proceedings have been pending for a number of months with no decision thereon, and during that time the property upon which the Southern Iron & Equipment Company has its claim is depreciating and deteriorating in value."

"Now therefore it is agreed between the Receiver, J. P. Wilkinson, and the Southern Iron & Equipment Company that the said Southern Iron & Equipment Company may repossess itself of the above described property, such repossession to be in satisfaction of the amount of its claim against the corporation, and may dispose of the said property as it sees fit, it being understood that in so repossessing the said property the Southern Iron & Equipment Company binds and obligates itself to indemnify the said Receiver against any liability or loss whatsoever, by reason of his action herein.

"Thus done and signed in the presence of the undersigned competent witnesses on this the 19 day of July 1926.

"Wilkinson, Lewis & Wilkinson,
Receiver
"Southern Iron & Equipment Co.,
by Cook & Cook, Attorneys."

This arrangement was concurred in by the attorneys for petitioners in bankruptcy. This was a private sale by the receiver, not authorized or sanctioned by the court. We said in our former opinion:

"This contract, in our view, is not entitled to be afforded effect. A contract, of such nature as the present, executed without an order of court, sanctioning its execution, is null and void."

Section 6, Act No. 159 of 1898, which is the general receivership act, provides that the receiver shall "hold, administer, manage and *dispose of the property * * * of such corporation in such manner as the Court may decide* to be for the best interest of all parties." (Italics ours). Section 10 of the same act provides that the court may order the sale of the property, and points out the method of making the sales.

A receiver may sell the property of the corporation at private sale upon order of the court by complying with the provisions of Act No. 43 of 1924. The provisions of these acts were not complied with by the receiver in this case before he permitted opponent to repossess the property. Therefore the property now belongs to the receiver and is subject to opponent's vendor's privilege and all the rights, which it originally had.

3. The third and last question is whether the vendor's privilege on this prop-

erty primes that accorded holders of the receiver's certificates by section 5, Act No. 159 of 1898, as amended by Act No. 199 of 1914, which latter act was in force at the time these proceedings were had.

In our former opinion we said, after quoting the pertinent portion of the 1914 act (No. 199):

"While the expression, 'the vendor's lien and privilege,' appearing in the exception in the foregoing quotation, is sufficiently broad to include the privilege on both movable and immovable property, yet an analysis of the provision, in which it appears, shows that it has reference only to the vendor's privilege on immovable property."

On further consideration, we have reached the conclusion that our former holding on this point is erroneous.

The act, in plain and unambiguous language, says that the sum obtained on certificates of indebtedness issued by the receiver shall "bear a privilege on all of the property *real or personal* and the income of the corporation to be paid by preference and priority over all other creditors of the corporation,— *save the vendor's lien* and privilege which may be outstanding due and owing at the time the certificates are issued, which vendor's lien and privilege shall remain *unimpaired* and retain its *present status as provided for by existing laws.*" (Italics ours.)

Article 13 of the Civil Code provides that: "When a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit."

The letter of this law is plain and without the slightest ambiguity. It says that the sum obtained on receivership certificates shall bear a privilege on the property real or personal of the corporation, and shall be paid by preference over all other creditors, "save the vendor's privilege." The vendor's privilege on what property? Necessarily the property affected by the other privilege.

This law as originally enacted, section 5, Act No. 159 of 1898, provides that: "The sum so obtained [on certificates issued by the receiver] shall bear a *first* privilege on the *property* and income of the corporation." This act was amended by Act No. 212 of 1910, p. 349, so as to provide:

"The sum so obtained shall bear a first privilege on all the property *real or personal* and the income of the corporation." (Italics ours).

The only change made in this part of the act was to add the words "real or personal" after the word "property" in the last sentence. The act was again amended by Act No. 199 of 1914, p. 381, and again by Act No. 7 of 1926, p. 9. In each of the latter acts the words "real or personal" were added after the word "property," as in the act of 1910. The evident purpose of the lawmaker in adding the words "real or personal" in these later acts was to remove all doubt, if any ever existed, as to what kind of property of the corporation was to be affected by the lien created in favor of the holders of the certificates.

The act of 1914 is written in two sentences, the second of which does two things: It creates a privilege in favor of the certificate holders and ranks that privilege second to the vendor's privilege. The first clause of the

sentence creates the privilege and describes the property affected by it, all the property *real or personal,* of the corporation, and then says that this privilege on the property of the corporation, *real and personal,* is to be "paid by preference and priority over all other creditors of the corporation,—save the vendor's * * * privilege."

The sole purpose of the latter clause, or the exception, is to rank the vendor's privilege above the other, which rests, by specific terms, upon both real and personal property. It is therefore perfectly clear from the letter of the act that the vendor's privilege mentioned was intended to be that which rests upon both the real and personal property of the corporation just as the other affects both.

If the Legislature had intended to make any distinction, we must assume that it would have done so. There is none indicated.

Act No. 7 of 1926, which amends the act of 1914, has no application because adopted subsequent to these receivership proceedings. But as indicating the legislative intent, it is pertinent to note that it made no change in the 1914 act, except to add to the exception "the mortgage on *lands* and improvements thereon securing any indebtedness, or obligation." So that a mortgage on the *lands* of the corporation was also ranked above the privilege created in favor of the holders of receivership certificates, but not a chattel mortgage on its personal property.

The original act has been amended three times, and, in each of the amending acts, the law is specific in its recitals that the sum obtained on receivership certificates shall bear a privilege on the real and personal property of the corporation, and in the act of 1926, which includes an exception in favor of mortgages as well as vendor's liens, it is specific in stating that the mortgage referred to is that upon "lands and improvements thereon." In view of these specific recitals, it can hardly be doubted that, if the Legislature had intended that the vendor's privilege mentioned was one affecting real estate alone, it would have said so in specific terms.

For the reasons assigned, it is ordered that the judgment appealed from, in so far as it affects this opponent, the Southern Iron & Equipment Company, be set aside, and that, as to it, the case be remanded in order that this opponent may assert whatever rights it originally had against the property involved, no part of the costs of this proceeding to be paid by this opponent. In all other respects, the judgment appealed from is affirmed. Right of the receiver to apply for rehearing is granted.

OVERTON, J. (dissenting).

I fail to find myself in accord with the majority opinion in the statement that the contract in this case shows on its face that it was entered into in the state of Louisiana, for that instrument does not show where it became a contract. This is so, because, although the instrument is dated in Louisiana, and signed by the vendee, it does not appear that it was signed by the vendor. As the instrument appears on its face, it is one that has not been accepted. It was accepted somewhere, for the merchandise was delivered, but whether in Louisiana, or in the state of the domicile of the vendor, the record does not

disclose, nor does the record disclose, with any degree of certainty, in my appreciation of the evidence, whether delivery was made in Louisiana, or in the state of the domicile of the vendor, and, if in the latter state, whether the law of that state grants a vendor's privilege on personal property. Therefore, in the present state of the record, it cannot be said with legal certainty whether the vendor has a vendor's privilege upon the property.

However, in my view of the case, these are not matters of importance, for I propose to assume, as was done in the original opinion, that the vendor has a vendor's privilege on the property sold. With this assumption made, the crucial point is then, whether, in act No. 199 of 1914, the vendor's privilege, therein mentioned, refers to the vendor's privilege on personal property, or on real property, or on both. I beg to differ with the majority opinion in the statement that the vendor's privilege, under the act, rests, by specific terms, upon both real and personal property. The act does not say specifically upon what kind of property that privilege rests. In deciding upon what kind of property it rests, it is only fair to take into consideration the result of the ruling. If the vendor's privilege, mentioned in the act, does not refer to that privilege on personal property, when receiver's certificates, the lessor's privilege, and the vendor's privilege are the conflicting privileges, each seeking preference over the other, then, in the very nature of things, it does not refer to that privilege on personal property, when it and the receiver's certificates are alone involved. To interpret the act so as to make the vendor's privilege refer to personal property is to bring the act in conflict with itself. This is apparent from the fact that the act, in the exception concerning the vendor's privilege, distinctly says, and with stress, that the "vendor's lien and privilege shall remain unimpaired and retain its present status as provided for by existing laws." If the vendor's privilege refers to personal property, within the intendment of the act, wherever the receiver's certificates, the lessor's privilege, and the vendor's privilege are each seeking preference over the other, the only way in which the court can grant the vendor's privilege priority over the lessor's, in order to award the fund to the vendor, is to hold, notwithstanding the prohibition in the act against affecting the status of the vendor's privilege, that the act has elevated the rank of that privilege above the lessor's privilege, for the lessor's privilege at the time of the passage of the act ranked the vendor's privilege on personal property. Civ. Code, art. 3263.

The act may be reconciled with itself, as pointed out in the original opinion, by the construction that the vendor's privilege therein mentioned refers to that privilege on real and not on personal property, but in no other way.

I greatly fear that the majority opinion places the court in such position that, when a conflict arises among the holders of receiver's certificates, a lessor's privilege, and a vendor's privilege, the court will have to reverse its present ruling to the injury of holders of certificates, or, in order to sustain its position, to ignore the injunction that the status of the vendor's privilege shall be maintained. I therefore respectfully dissent, adhering to the original opinion handed down.