**CONSUMERS OIL CO., Inc., v. PERRY TRANSFER & STORAGE, Inc.***

No. 4959.

Court of Appeal of Louisiana, Second Circuit.

June 29, 1935.

*Rehearing denied July 15, 1935.

Munholland & Munholland, of Monroe, for appellant.

Hawthorne & Files, of Bastrop, for appellee.

TALIAFERRO, Judge.

On October 30, 1930, A. R. Brown sold to Perry Transfer & Storage, Inc., defendant, eleven motor trucks for $2,500, payable in seventeen monthly installments. A chattel mortgage was given on the trucks to secure payment of the notes, interest, and 10 per cent. attorney's fees. On October 29, 1931, J. R. Brown, alleging himself to be the owner of all the unpaid notes, eleven in number, aggregating $1,650, instituted foreclosure proceedings via ordinaria thereon, and sued out a writ of sequestration under which all the trucks were seized by the sheriff. Six of them were promptly bonded by defendant. On November 17, 1931, judgment was rendered and signed in the case for the amount sued for, which recognized the mortgage and vendor's lien on the trucks and the sequestration under which they were seized; and they were ordered sold to pay the judgment.

On November 24, 1931, defendant being in financial distress, a receiver was appointed by the district court of Ouachita parish to take over its assets, etc., and operate it as a going concern. Four days thereafter, the trucks were seized by the sheriff under fi. fa. issued on said judgment. The receiver sued out a rule against Brown and the sheriff to show cause why the seized chattels should not be relinquished and released to him, and on trial of the rule there was judgment in favor of the receiver, as by him prayed for. Sale of the property was enjoined and restrained. No appeal was prosecuted from this judgment.

In February, 1932, on representations of the receiver that the company's business could not be operated at a profit, but on the contrary could only be carried on at a loss, the court ordered that its affairs be liquidated and its assets be sold separately, at public sale, for not less

than two-thirds of the appraisement thereof; and that separate account be kept of the proceeds derived from a sale conducted in such manner.

At the first offering, with a few exceptions, no one would bid two-thirds of the appraised value of any of said assets. They were then advertised for sale for what they would bring on twelve months' credit. Seven of the trucks brought $119. The other four were not sold, possibly for the reason they were never in the possession of the receiver, or were valueless.

Before the receiver's sale, Brown, upon a petition disclosing the nature of his preference rights against the trucks, as recognized in the judgment in his favor against the company, secured an order of court directing the receiver to separately sell said trucks and to hold the proceeds derived from such sale until further orders of the court. The receiver filed a provisional account wherein he does not separately disclose the amount the trucks brought at public auction, and wherein he proposed a plan of distribution of all the funds coming into his hands, which ignores Brown entirely, and out of which he will receive no amount whatever. The operating expenses of the business while in receivership, according to this account, absorbed all of the funds and revenues reaching the receiver. The correctness of the account is opposed by Brown. He contends that the $119 should be paid to him, without contribution to any extent to the receivership costs and expenses. From a judgment dismissing his opposition and homologating the account, he prosecutes this appeal.

The receiver contends that because the court authorized him to operate the business of the Perry Transfer & Storage, Inc., as a going concern, and to purchase from day to day such supplies as were necessary to conduct said business, the expenses of such operation and the cost of supplies purchased under said authority prime the vendor's lien and privilege held by Brown on the proceeds of sale of the trucks. As a general rule, this contention is untenable. Morelock v. Morgan & Bird Gravel Co., 174 La. 658, 681, 141 So. 368.

But we think the facts of the present case remove it from the rule.

Act No. 7 of 1926, amending prior acts on the subject-matter therein dealt with, provides that the court, in its order appointing a receiver, may confer upon him such powers of administration as it deems best for the interest of all parties, and may from time to time restrict or enlarge such powers, and may authorize such receiver, in order to carry on the business of the corporation, to borrow or obtain money on certificates of indebtedness to be taxed as costs of court, and then further provides as follows: " * * * The sum so obtained shall bear a privilege on all of the property real or personal and the income of the corporation to be paid by preference and priority over all creditors of the corporation, save and excepting the mortgage on lands and improvements thereon securing any indebtedness, or obligation, and the vendor's lien and privilege which may be outstanding, due and owing at the time certificates are issued, which mortgage, vendor's lien and privilege shall remain unimpaired and retain their present status as provided by existing laws."

It is clear from this statute that even certificates issued pursuant thereto do not enjoy priority in rank over the vendor's lien and privilege in existence against the corporate property at inception of the receivership proceedings, though they are ranked as costs. Usual costs of the receivership take precedence over ordinary operating expenses incurred, while the corporation is operated as a going concern. In the present case, no certificates were issued. If such had issued, they would take precedence for payment over the usual and ordinary expenses incurred in operating the business as a going concern; but since they would not prime a vendor's lien as regards proceeds of sale of the property affected thereby, it reasonably and logically follows that the usual and ordinary expenses do not prime the vendor's lien as regards proceeds of sale of the property thereby affected. Morelock v. Morgan & Bird Gravel Co., supra; Hudson & Sons v. Uncle Sam Planting & Mfg. Co. et al., 136 La. 1071, 68 So. 129.

The foregoing principles are applicable to cases where the holder of a vendor's lien promptly avails himself of the right to require the receiver to sell at once the chattels affected by the lien, to the end that he may be promptly paid. Though he may not have the right to directly seize the affected chattels in the receiver's hands, yet he may compel

prompt sale by him as receiver to pay the amount secured by the lien, in which case only the cost of such a sale is chargeable to the proceeds. Hudson & Sons v. Uncle Sam Planting &· Mfg. Co., supra; International Harvester Co. v. Union Irr. Co., 150 La. 405, 90 So. 741, 751; Knighton v. Safety Tire Service (La. App.) 150 So. 582.

■ But, as in this case, where the lienor allows the property to remain indefinitely under the control and dominion of the receiver, permitting it thereby to materially depreciate in value, the rule is different. Anent this point, the Supreme Court, in the International Harvester Case, supra, said: "Instead of exercising this summary remedy, in which case it would have incurred the costs only of this particular sale and proceeding, the International Harvester Company permitted its property upon which it had a privilege to remain under the dominion, control, and operation of the receivership, taking the risk of such experiment, and therefore it subjected its property to the costs and charges of the receivership, the same as other creditors pursuing the same course."

This dictum is quoted approvingly in Re Clover Ridge Planting & Mfg. Co., 178 La. 302, 317, 151 So. 212.

■■ It is true that Brown attempted to force a sale of the trucks by having them seized by the sheriff under execution issued on his judgment against the corporation, but, as disclosed from decisions cited above, this was not the appropriate method to enforce his preference rights thereon. He, by proceeding via ordinaria, waived his right to proceed via executiva; and therefore was without a remedy by which he could divest the possession of the receiver by direct seizure. He was relegated to the course of requiring the receiver to sell the property promptly for account of his judgment, if he would escape the disastrous results his failure to do so would visit upon him. Board of Missions of M. E. Church South v. C. D. Craighead Co., Ltd., 130 La. 1076, 58 So. 888.

■ Appellant assigns as error of the court a quo that the right was not reserved to him to sue the receiver to recover all damages sustained by him "because of the destruction of mortgaged property and damage thereto by the receiver." We think him entitled to an amendment of the judgment in this respect.

For the reasons assigned, the judgment appealed from is hereby amended by reserving to appellant the right to sue the receiver to recover any damages (recoverable under the law) sustained by him because of the destruction of the mortgaged property and damage thereto by said receiver; in all other respects said judgment is affirmed, with costs.